UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 15-74 (BAH) |
| | : | |
| Cody Alexander, | : | (Under Seal) |
| | : | |
| Defendant. | : | |

**FILED**
**DEC 27 2016**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

## GOVERNMENT'S SENTENCING MEMORANDUM AND MOTION FOR DEPARTURE PURSUANT TO SECTION 5K1.1 OF THE UNITED STATES SENTENCING GUIDELINES.

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing of defendant Cody Alexander. Incorporated into this memorandum is a motion to depart downward from the sentencing guidelines in light of the defendant's cooperation.

1. **Factual Summary**

Alexander, prior to and during January 2015, was buying ounce quantities of methamphetamine for $2,000 an ounce in Washington, D.C. In mid-February 2015, Alexander lived at 2690 Sherman Avenue, NW. Alexander's roommate and boyfriend, Juan Campos, to whom Alexander provided methamphetamine, introduced him to Jared Smith, who lived in California. Alexander and Smith agreed that Smith would sell methamphetamine to Alexander for $1000 an ounce, as well as distribute methamphetamine to associate Fred Pagan, who would pay for portions of the shipments. Smith, using the pseudonym "Don Peaks," sent both Alexander and Pagan ounce quantities in February 2015 and March 2015, from California to

1

Pagan's residence. Pagan received at least five packages from Smith of at least one ounce of methamphetamine, which Alexander would then have delivered to Alexander's house to divide up. Alexander estimates he arranged to have transferred from Smith to Pagan approximately six ounces of methamphetamine in February 2015 and March 2015. Alexander received at least 10 shipments from Smith during this time period of a total of approximately 12 ounces of methamphetamine for himself, which Alexander then used and distributed.

Alexander also arranged on occasions during the time period of the conspiracy for Kenneth Cannon to receive packages of methamphetamine at Cannon's address of 7020 Old Stage Road, Rockville, Maryland, and hold it for Alexander, for which Alexander would provide payment of an 8 ball (approximately 3.5 grams) of methamphetamine to Cannon.

On or about April 4, 2015, Alexander flew to Los Angeles, California and purchased several ounces of methamphetamine from an individual named "Batu." On or about April 7, 2015, Alexander traveled to Monterrey, California, met with Smith, and shipped the methamphetamine he purchased from Batu to the 2690 Sherman Avenue, NW address. During this time period he also sent methamphetamine purchased from Batu to Joshua Sacks at 5012 Cedar Croft Lane, Bethesda, Maryland, to hold for him in exchange for an 8 ball of methamphetamine. On or about April 8, 2015, Alexander went to San Francisco, California, where he subsequently made contact with a former source, Nathan Griffin. Alexander gave Griffin $4,000 and agreed to pay him approximately $3,000 later, in exchange for which Griffin gave Alexander some methamphetamine (actual). Alexander then purchased three ring note book binders and other materials to conceal this methamphetamine. He divided the methamphetamine, sealed it, and placed it in the binders. He also contacted Juan Campos, Kenneth Cannon and Fred

Pagan and advised them he would be shipping them packages of methamphetamine for them to hold and return to him later. Alexander shipped one to the 2690 Sherman Avenue, NW address, one to Pagan's residence, one to Kenneth Cannon's residence, and one to a residence Alexander owned at 11554 Summer Oak Drive, Germantown, Maryland.

The package containing methamphetamine located at Fred Pagan's house on April 23, 2015 by law enforcement was meant for both Alexander and for Pagan. Alexander told Pagan, who had opened the package, to take what he wanted, weigh it, return the rest to Alexander, and they would work out how much Pagan owed Alexander later. Alexander was aware that Pagan provided methamphetamine to others.

Alexander during this time period sold methamphetamine to Joshua Sacks, and provided the package of methamphetamine from Batu for Sacks to hold in April 2015. Joshua Sacks also received a supply of methamphetamine from Smith. Sacks on occasion provided personal use quantities of methamphetamine to Alexander.

Law enforcement recovered the methamphetamine sent from Alexander to Cannon in one of Alexander's binders on April 23, 2015. The methamphetamine was 97.9 percent pure and the amount of pure substance was approximately 109.4 grams.

Law enforcement recovered the methamphetamine sent from Alexander to his Germantown house in one of Alexander's binders on April 24, 2015. The methamphetamine was 98 percent pure and the amount of pure substance was approximately 113.9 grams. Similar amounts of actual methamphetamine were located at Alexander's and Campos' Sherman Avenue address, and at Fred Pagan's residence. Law enforcement recovered approximately 40 grams of methamphetamine from Joshua Sacks' residence.

Alexander admits that between February 2015, and April 23, 2015, he possessed with the intent to distribute 500 grams or more of methamphetamine (actual).

The defendant was afforded an opportunity to plead to Conspiracy to Distribute and Possess With Intent to Distribute 50 Grams or More of Methamphetamine (actual), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(viii), and 846.

2. **Argument Concerning Sentencing**

Pursuant to 18 U.S.C. § 3553(a) the court shall impose a sentence that is sufficient, but not greater than necessary to comply with the purposes of the statute which include the need for the sentence: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training.

In addition, the statute requires the court to consider a number of factors in determining the appropriate sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

The Presentence Investigation Report ("PSR") calculates the defendant's total offense level as 34 and a criminal history category of I. The defendant has met the requirements for the safety valve and has accepted responsibility for his actions. Accordingly, subtracting five points, the guideline imprisonment range is 87-108 months.

The government views the defendant as having provided substantial assistance in the

investigation of methamphetamine distribution in the greater Washington, D.C. area, and requests that the Court sentence the defendant to a lesser period of imprisonment under the Sentencing Guidelines, as well as pursuant to 18 U.S.C. § 3553(e).

On April 23 and 24, 2015, at the time that the government executed warrants in the Washington, D.C. area, as described above, Alexander was in California. He became aware of the investigation and through his attorney quickly reached out to the government. Alexander explained, in minute and thorough detail, how he purchased the narcotics, how he arranged the deliveries, and how he sold the narcotics, as well as the other individuals involved in the conspiracy. Critically for the purposes of further investigation, Alexander identified Smith, and explained that he made his purchases from Smith through PayPal, which enabled the government to track down Smith and through legal process obtain records of Smith's PayPal account. Smith's PayPal account revealed that Smith had sold redistributable quantities of high quality methamphetamine to multiple individuals in several states and the District of Columbia, many of which individuals used their own names to send payment to Smith – the PayPal account was essentially a roadmap for who generally bought from Smith, the quantities, the amounts paid, and the frequency of sales. As a result, the government has successfully prosecuted several individuals, including Smith. Alexander's quick and thorough cooperation contributed to those successful prosecutions. Additionally, Alexander's early cooperation was useful in the prosecution of Fred Pagan, who, while his relevant conduct was significantly less than Alexander's, litigated disputed facts. Alexander's cooperation very likely helped convince Pagan to plead guilty in lieu of further litigation.

The Court should recognize that the defendant, a smart citizen working towards a nursing

degree, repeatedly and knowingly violated the law over a long period of time to access large amounts of an addictive narcotic, in part to feed his own habit and to sell.  He involved several other people in his schemes without much apparent thought to the consequences of his actions, or who he would involve.  His conduct was dangerous and broadly affected the lives of many.  Based, however, in part on his extensive cooperation, the government was able to hold the conspiracy accountable and shut it down, and this is no small thing.  Although Alexander had a positive test during the pendency of his case, he has now availed himself of treatment and appears to engage in less risk adverse behavior.   Based on all these factors, the government asks the Court for a sentence of home detention for 8 months.

The parties have agreed to a final order of forfeiture of $13,200, and would request that this figure be entered into the final judgment and commitment order.   This calculation was negotiated for the purposes of sentencing in this case and might be inapplicable to other cases or defendants.

Respectfully Submitted

Channing D. Phillips
United States Attorney

BY:  _____/s/_____

Jeffrey Pearlman
DC Bar No. 466901
Assistant United States Attorney
United States Attorney's Office
555 Fourth St., NW. 4th Floor
Washington, D.C.  20001
202-252-7228
Jeffrey.pearlman@usdoj.gov